# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| NEW LOUISIANA HOLDINGS, LLC;<br>FOUNTAIN VIEW 215 TENANT LLC;<br>JACKSON MANOR 1691 TENANT LLC;<br>PANOLA 501 GP LLC; RETIREMENT<br>CENTER 14686 TENANT LLC; ACADIAN<br>4005 TENANT LLC; LAKEWOOD<br>QUARTERS REHAB 8225 TENANT LLC;<br>REGENCY 14333 TENANT LLC;<br>SHERWOOD 2828 TENANT LLC;<br>LAKEWOOD QUARTERS ASSISTED 8585<br>TENANT LLC; PANOLA 501 PARTNERS<br>LP; CITISCAPE OUT PARCEL TENAT<br>LLC; CITISCAPE 5010 TENANT LLC; ST.<br>CHARLES 1539 TENANT LLC;<br>WOODLAND VILLAGE 5301 TENANT<br>LLC; ATRIUM 6555 TENANT LLC; and<br>HARRIS SCHWARTZBERG,<br><br>Plaintiffs,<br><br>v.<br><br>RICHARD ARROWSMITH,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 11 C 5031<br><br>Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER

New Louisiana Holdings, et al.[1] ("Plaintiffs") initiated this discrimination suit against GE

---

[1] Plaintiffs include the following entities and individual: New Louisiana Holdings, LLC; Fountain View 215 Tenant LLC; Jackson Manor 1691 Tenant LLC; Panola 501 GP LLC; Retirement Center 14686 Tenant LLC; Acadian 4005 Tenant LLC; Lakewood Quarters Rehab 8225 Tenant LLC; Regency 14333 Tenant LLC; Sherwood 2828 Tenant LLC; Lakewood Quarters Assisted 8585 Tenant LLC; Panola 501 Partners LP; Citiscape Out Parcel Tenant LLC; Citiscape 5010 Tenant LLC; St. Charles 1539 Tenant LLC; Woodland Village 5301 Tenant LLC; Atrium 6555 Tenant LLC (collectively, "Corporate Plaintiffs"); and Harris Schwartzberg.

Business Financial Services, Inc. ("GE Financial"); GE Healthcare Financial Services, Inc.;

General Electric Capital Corporation; CIT Healthcare LLC ("CIT"); Marathon Structured

Finance Fund, L.P. ("Marathon") (collectively, the "Entity Defendants"); and Richard

Arrowsmith ("Arrowsmith") (collectively, with the Entity Defendants, "Defendants). The

Plaintiffs bring claims pursuant to 42 U.S.C. § 1981 ("Section 1981") and the Equal Credit

Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.* (R. 1, Compl.) Presently before the Court

are Arrowsmith's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6),[2] (R.

25, Arrowsmith's Mot.), and Arrowsmith's amended petition for fees, (R. 58, Arrowsmith's Am.

Pet.)[3] For the reasons discussed herein, the Court grants Arrowsmith's motion to dismiss and his

petition for fees.

## RELEVANT FACTS

Corporate Plaintiffs consist of a network of nursing facilities that provide long-term care

to seniors. (R. 1, Compl. ¶¶ 30, 32.) Plaintiff Harris Schwartzberg ("Schwartzberg") and his

father, Albert Schwartzberg, who is not a party to this suit (collectively, the "Schwartzbergs"),

are Jewish. (R. 1, Compl. at 2.) According to Plaintiffs, on January 18, 2006, "the

Schwartzbergs, through Plaintiff New Louisiana Holdings, LLC and its affiliates, acquired the

---

[2] As explained below, because the Entity Defendants have been dismissed, Arrowsmith is the only remaining defendant. The Court thus refers to Defendants' motion to dismiss as Arrowsmith's motion.

[3] Also before the Court is Arrowsmith's Motion to Reconsider (R. 47), the Court's June 4, 2012 Minute Entry (R. 46), denying as moot Defendants' Petition for Fees on the basis of an agreed order of dismissal as to the Entity Defendants. Because the agreed order of dismissal only applied to the Entity Defendants, and not to Arrowsmith, and because the Petition for Fees was filed on behalf of all Defendants, including Arrowsmith, the Court grants Arrowsmith's Motion to Reconsider.

right to operate twelve nursing and assisted living facilities in and around Louisiana." (*Id.* at 3; *id.* ¶ 39.) The acquisition was effected through a number of agreements. (*Id.* ¶ 40.) The purchase of the twelve nursing facilities was financed through a term loan that was secured by the real estate and physical assets of the facilities. (*Id.* ¶¶ 40-41.) The borrowers on the term loan (the "Term Borrowers") are the title holders of the real estate and physical assets of the twelve nursing facilities and are not parties to this action. (*Id.* ¶ 41.) The Term Borrowers lease the twelve nursing facilities to Corporate Plaintiffs. (*Id.*) In addition to leasing the twelve nursing and assisted living facilities, the Corporate Plaintiffs also operate the facilities. (*Id.* ¶ 42.) Merrill Lynch Capital ("Merrill"), CIT, and Marathon were the original lenders on the Term Loan. (*Id.* ¶ 40.)

In a separate agreement, the original lenders entered into a Credit and Security Agreement (the "Operating Loan") with Corporate Plaintiffs. (*Id.* ¶ 42.) The Operating Loan contains two credit facilities: (1) a term loan in the original principal amount of $14 million, and (2) a

revolving credit loan of up to $8 million.[4] (*Id.*) The Operating Loan appointed an "Administrative Agent" and granted the Administrative Agent discretion to make decisions regarding the revolving loan. (*Id.* ¶ 45.) Originally, Merrill acted as the Administrative Agent. (*Id.* ¶ 49.) In connection with Corporate Plaintiffs' execution of the Operating Loan, Schwartzberg executed Guaranty Agreements, (*id.* ¶¶ 17, 143), pursuant to which he personally guaranteed the payment of the Operating Loan. (R. 29-3, Ex. B, Guaranty Agreement; R. 29-4, Ex. C, Amended Guaranty Agreement.) In December 2007, GE Financial acquired Merrill's healthcare financing business and, as a result, assumed Merrill's position as the Administrative Agent for the Operating Loan.[5] (*Id.* ¶ 50.) GE Financial designated Arrowsmith as the individual responsible for administering the Operating Loan. (*Id.* ¶ 51.)

---

[4] The limitations on what the Court may consider on a motion to dismiss pursuant to Rule 12(b)(6) are attenuated by Rule 10(c) insofar as "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice" may all be considered by the Court without converting a motion to dismiss into a motion for summary judgment. *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (citing Fed. R. Civ. P. 10(c)). Although Plaintiffs failed to attach a copy of the Operating Loan to their complaint, Defendants attached the agreement to their motion to dismiss. (R. 29-1, Ex. A, Credit and Security Agreement (Revolving Credit and Term Loan) dated as of January 18, 2006.) Documents that defendants attach to a motion to dismiss will be considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("[A] defendant may introduce certain pertinent documents if the plaintiff failed to do so. Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.") (internal citations omitted) (collecting cases); *see also* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1327 (3d ed. 2012). Here, because the complaint repeatedly refers to the Operating Loan, and because the Operating Loan is central to Plaintiffs' claims, the Court considers the Operating Loan submitted by Defendants to be part of the pleadings.

[5] The current lenders are GE Financial, CIT, and Marathon (the "Lenders"). (R. 1, Compl. ¶ 50.)

4

The gravamen of Plaintiffs' complaint is that Arrowsmith's anti-Semitism affected the administration of the Operating Loan, making it difficult for Corporate Plaintiffs to operate effectively. (*Id.* at 2-4.) According to Plaintiffs, "Arrowsmith embarked upon a campaign to harm the Schwartzberg family and to hurt their business after he took over as the loan administrator for the Lenders." (*Id.* at 3.) Specifically, Plaintiffs allege that Arrowsmith declared a series of defaults under both the Operating and Term Loans, (*id.* ¶¶ 56-57), dramatically decreased the amount of funds available to be borrowed through the Operating Loan, (*id.* ¶ 59), caused GE Financial to assess financial penalties on Corporate Plaintiffs, (*id.*), and increased the amount of required reserves thereby further reducing the amount of funds available to be borrowed, (*id.* ¶¶ 62, 72-73). Plaintiffs allege that Arrowsmith referred to the Schwartzbergs as "those people," (*id.* at 4, ¶ 63), and that he was motivated to take these actions by his anti-Semitism, (*id.* ¶ 66).

## PROCEDURAL HISTORY

On June 2, 2011, Plaintiffs filed a six-count complaint against Defendants in the United States District Court for the Southern District of New York ("the New York Action"), asserting that Arrowsmith had discriminated against them in violation of Section 1981 and the ECOA. (R. 9-1, Ex. 1, S.D.N.Y. Compl.) Plaintiffs also asserted claims for breach of contract, and breach of the covenant of good faith and fair dealing, and they sought an accounting and a declaratory judgment.[6] (*Id.*) Plaintiffs filed their action in the Southern District of New York, even though Corporate Plaintiffs agreed in the Operating Loan to submit to the jurisdiction of state or federal

---

[6] The complaint in the New York Action contains the same causes of action and is substantially the same as the complaint filed in the instant action. (*See* R. 9-6, Ex. 6, Redline.)

courts in Chicago, Illinois. (R. 29-2, Ex. A, Credit and Security Agreement (Revolving Credit and Term Loan) dated as of January 18, 2006, at 27.) On July 13, 2011, Defendants filed a letter with Judge Naomi Reice Buchwald, the judge in the Southern District of New York to whom Plaintiffs' action was assigned. (R. 9-2, Ex. 2, July 13, 2011 Letter.) In their letter, Defendants requested a pre-motion conference in advance of filing a motion to dismiss and setting forth the anticipated basis of that motion. (*Id;* R. 9, Defs.' Mot. for Costs Mem. at 3.) On July 21, 2011, Judge Buchwald informed the parties via letter that the court "wish[ed] to afford plaintiffs an opportunity to amend their complaint within twenty (20) days[.]" (R. 9-4, Ex. 4, July 21, 2011 Letter at 2.) Judge Buchwald further stated that "having been afforded the opportunity to amend the complaint in response to the defendants' letter submission, plaintiffs should not anticipate being granted a further opportunity to amend, should [the court] find that there is merit in some or all of the defendants' arguments." (*Id.*) On July 25, 2011, Plaintiffs voluntarily dismissed the New York Action pursuant to Rule 41(a) of the Federal Rules of Civil Procedure and did not amend their complaint. Min. Entry, *New Louisiana Holdings, LLC v. GE Business*, No. 11-3773 (July 25, 2011) ECF No. 4. That same day, in compliance with the terms of the Operating Loan, Plaintiffs re-filed their action against Defendants in the Northern District of Illinois. (R.1, Compl.) The case was randomly assigned to this Court.

On July 29, 2011, Defendants moved the Court for an order directing Plaintiffs to pay the costs and fees they incurred in defending the suit that Plaintiffs filed in the Southern District of New York, and for an order staying the current action until Plaintiffs did so, pursuant to Rule 41(d) (the "Costs Motion"). (R. 8, Defs.' Mot. at 1-2.) On August 10, 2011, the Court granted Defendants' Costs Motion. (R. 20, Min. Entry.) The Court awarded Defendants those costs

incurred in litigating the New York Action that were not necessary or useful to the instant action, and ordered Defendants to file a petition for costs by August 24, 2011. (*Id.*; R. 59-1, Ex. 1, Aug. 10, 2011 Tr. at 8:9-13.) On August 24, 2011, Defendants filed the court-ordered petition. (R. 21, Defs.' Pet.)

On November 16, 2011, the Entity Defendants and Plaintiffs filed an agreed motion to dismiss the Entity Defendants, which the Court granted on November 21, 2011. (R. 38, Joint Mot.) The Entity Defendants were thereby dismissed from this action with prejudice and without cost to Plaintiffs or Entity Defendants. (R. 44, Min. Entry; R. 45, Order of Dismissal.) On June 4, 2012, the Court dismissed as moot Defendants' petition for costs on the grounds that the Entity Defendants were no longer parties to the action subject to the agreed order of dismissal. (R. 46, Min. Entry.) On June 19, 2012, Arrowsmith moved for reconsideration of the Court's June 4 minute entry because Defendants' petition for fees was filed on behalf of all Defendants, including Arrowsmith, and therefore the petition for fees was not moot as to him. (R. 47, Arrowsmith's Mot. Recons.; R. 48, Arrowsmith's Mem.) On June 28, 2012, the Court heard the motion to reconsider and ordered Arrowsmith to submit a separate fee petition by July 12, 2012. (R. 55, Min. Entry.) On July 12, 2012, Arrowsmith filed an amended fee petition seeking $16,269.00 in attorneys' fees incurred in litigating the New York Action and $13,710.00 incurred in researching, drafting, and filing the Costs Motion, for a total of $29,979.00 in attorneys' fees. (R. 58, Arrowsmith's Am. Pet. at 1-2.) On July 23, 2012, Plaintiffs filed a response brief in opposition to Arrowsmith's amended fee petition. (R. 61, Pl.'s Resp.)

In the instant action, Plaintiffs assert six counts against Defendants. The relevant counts

that remain after the dismissal of the Entity Defendants are Counts I, II, and V.[7] In Count I,

Corporate Plaintiffs [8] allege that "Defendants intentionally discriminated against [them] on the

basis of their racial identity," in violation of Section 1981. (R. 1, Compl. ¶ 116.) In Count II,

Corporate Plaintiffs allege that "Defendants discriminated against [them] on the basis of their

Jewish identity with respect to the Loan Agreements[,]" through their administration of the

Operating Loan, in violation of the ECOA. (*Id.* ¶ 123.) In Count V, Corporate Plaintiffs allege

that "Defendants have acted in bad faith by failing to disclose their calculations, methodologies,

and other bases for" reducing available funds, withholding funds in reserve accounts, and

demanding that Corporate Plaintiffs pay excessive loan-related fees, penalties, and expenses, and

Corporate Plaintiffs accordingly request an accounting. (*Id.* ¶ 137.)

On September 7, 2011, Arrowsmith filed a motion to dismiss. (R. 25, Arrowsmith's

Mot.) Arrowsmith argues that Plaintiffs' discrimination claims should be dismissed because

Plaintiffs have failed to sufficiently allege that they have a racial or religious identity. (R. 24-1,

Defs.' Mem. at 12-16.) On October 11, 2011, Plaintiffs filed a response to Arrowsmith's motion

---

[7] Counts III and IV are asserted against the Lenders, which consist of GE Financial, CIT, and Marathon, and so those claims are no longer viable because they are only alleged against defendants who are no longer parties to this suit. (R. 1, Compl. ¶¶ 125-135; R. 45, Order of Dismissal.) In Count VI, Schwartzberg sought a declaratory judgment "as to the rights and other legal relations of Harris Schwartzberg and Lenders." (*Id.* ¶ 142.) Because a controversy no longer exists between Schwartzberg and the Lenders, the Court finds the request contained in Count VI moot.

[8] According to the complaint, each of the Corporate Plaintiffs is also a borrower under the Operating Loan. (R. 1, Compl. ¶¶ 1-16, 42.) Accordingly, the complaint refers to Corporate Plaintiffs as Operating Borrowers. (*See, e.g., id.* ¶ 42.)

to dismiss, (R. 33, Pls.' Resp.), and on November 1, 2011, Arrowsmith filed a reply in support of his motion, (R. 37, Arrowsmith's Reply).

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). When reviewing a motion to dismiss, the Court accepts as true all of the factual allegations pled in the complaint and draws all reasonable inferences in favor of the nonmoving party. *Id.* Pursuant to Rule 8(a)(2), a complaint must contain "a 'short and plain statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, a complaint need not contain detailed factual allegations, but must contain sufficient factual matter that when accepted as true, states a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp*, 550 U.S. at 570). If the factual allegations are well-pleaded, the Court assumes their veracity and then proceeds to determine whether they plausibly give rise to an entitlement to relief. *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Plausibility" in this context does not imply that the Court "should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 514 F.3d 400, 404 (7th Cir. 2010). Rather, to survive a motion to dismiss under Rule 12(b)(6), the "plaintiff must give enough details about the subject matter of

the case to present a story that holds together." *Id.* In other words, "the court will ask itself *could* these things have happened, not *did* they happen." *Id.*

<h2 style="text-align:center">ANALYSIS</h2>

## I.  Motion to dismiss

In Counts I and II, Corporate Plaintiffs allege that Arrowsmith discriminated against them on the basis of their racial and religious identities—Jewish—in violation of Section 1981 and the ECOA. (R. 1, Compl. ¶¶ 116, 123.) Specifically, in Count I, Corporate Plaintiffs allege that they are each "a legal identity that has acquired a racial identity," (*id.* ¶ 115), and that "Defendants intentionally discriminated against [them] on the basis of their racial identity," (*id.* ¶ 116). In Count II, Corporate Plaintiffs allege that they are each "a legal identity that has acquired a racial and religious identity with a minority group," (*id.* ¶ 120), and that "Defendants discriminated against [them] on the basis of their Jewish identity," (*id.* ¶ 123).

Arrowsmith argues that Corporate Plaintiffs' Section 1981 and ECOA claims should be dismissed "for failure to allege adequately that Corporate Plaintiffs, the entities asserting the claims, have a racial or religious identity." (R. 29, Arrowsmith's Mem. at 9-10.) According to Arrowsmith, Counts I and II are devoid of any factual support for Corporate Plaintiffs' fundamental allegation that they have a racial or religious identity. (*Id.* at 13.) Arrowsmith argues that Corporate Plaintiffs' "sole allegation that the entities are members of a protected class is that [they] have acquired a racial and religious identity with a minority group, namely Jews." (*Id.*)

Furthermore, Arrowsmith argues that "the Complaint contains *no* allegations that Arrowsmith, the only direct actor described in the Complaint, discriminated against Corporate

Plaintiffs." (*Id.* at 10.) According to Arrowsmith, the Complaint only alleges that he referred to the Schwartzbergs as "those people," but "there is no support in law or in fact that simply using the plural pronoun 'those' is anti-Semitic." (*Id.*) Additionally, Arrowsmith asserts that "while the discrimination claims are asserted by Corporate Plaintiffs, the conduct alleged to be discriminatory relates only to the Schwartzbergs." (*Id.*) Therefore, Arrowsmith concludes, "without *any* allegation of direct discrimination against Corporate Plaintiffs—the parties asserting the claims—the claims must be dismissed." (*Id.*)

## A.    Discrimination claims under Section 1981 and the ECOA

Section 1981 prohibits discrimination in the "mak[ing] and enforc[ment of] contracts." 42 U.S.C. § 1981. Although Section 1981 does not use the term "race," the Supreme Court has construed Section 1981 to "forbid all 'racial' discrimination in the making of private as well as public contracts." *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987) (citing *Runyon v. McCrary*, 427 U.S. 160 (1976)). To state a *prima facie* claim of discrimination under Section 1981, a plaintiff must allege "that (1) he is a member of a racial minority; (2) the defendants had the intent to discriminate on the basis of race; and (3) the discrimination concerned the making or enforcing of a contract." *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756 (7th Cir. 2006) (citing *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996)).

Similarly, the ECOA provides, in relevant part, that "[i]t shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . . on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a)(1); *see also* 12 C.F.R. § 202.4(a). The ECOA creates a private right of action for actual and punitive damages, equitable and declaratory relief, and recovery of costs and attorneys' fees.

11

15 U.S.C. § 1691e(a)-(d). To state a *prima facie* claim of discrimination under the ECOA, plaintiffs must allege that they were applicants, as defined by the ECOA, and that defendants treated them less favorably because of their race or religion. 16 U.S.C. § 1691(a)(1); 12 C.F.R. § 202.2(n) ("Discriminate against an applicant means to treat an applicant less favorably than other applicants."); *see also Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 538 (7th Cir. 2011).

Therefore, under both Section 1981 and the ECOA, a plaintiff must allege that he is a member of a protected class who was discriminated against because of his minority identity. The Section 1981 and ECOA counts at issue here are brought solely by Corporate Plaintiffs. (R. 1, Compl. ¶¶ 114-124.) Specifically, Corporate Plaintiffs allege that they are members of a protected minority because they have acquired a racial and religious identity with a minority group, namely Jews, and that Arrowsmith discriminated against them because of their Jewish identity. (R. 1, Compl. ¶¶ 115-116, 120, 123.)

The threshold question with respect to the Section 1981 and ECOA claims is whether Corporate Plaintiffs have acquired a racial or religious identity. In *Village of Arlington Heights v. Metropolitan Housing Development Corporation*, 429 U.S. 252, 264 (1977), the Supreme Court stated in dicta that a corporation has no racial identity and therefore cannot be the direct target of discrimination. Since *Village of Arlington Heights*, however, various federal appellate courts have found that under some circumstances "a corporation may have standing to allege racial discrimination." *Triad Assocs., Inc. v. Chi. Hous. Auth.*, 892 F.2d 583, 591 (7th Cir. 1989) (remanding where the district court did not properly consider the implications of post-*Village of Arlington Heights* precedent), *overruled on other grounds by Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 673 (1996); *see also Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368

F.3d 1053, 1058-59 (9th Cir. 2004). The Supreme Court itself has recognized that the Courts of Appeals which have considered the issue have concluded that corporations may indeed assert Section 1981 claims.[9] *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 473 n.1 (2006). Although the Seventh Circuit has not explicitly addressed the question, other federal appellate courts have held that corporate entities may assert Section 1981 claims in limited circumstances. *See Hudson Valley Freedom Theater, Inc. v. Heimbach*, 671 F.2d 702, 705-07 (2d Cir. 1982). Circumstances in which a corporate entity may bring suit under Section 1981 include cases in which a corporation is owned entirely by shareholders of a single race, *Amber Pyramid, Inc. v. Buffington Harbor Riverboats, LLC*, 129 Fed. App'x. 292, 294 (7th Cir. 2005) (allowing corporation owned by two African-American sisters to maintain a suit under Section 1981), cases in which a corporation has acquired a protected identity pursuant to a government designation, *Thinket Ink Info. Res., Inc.*, 368 F.3d at 1060 (holding that a corporate plaintiff, which was entirely owned by African-Americans, and certified by the Unites States Small Business Administration as a "minority-owned business," had standing to bring a Section 1981 action), or cases in which a corporation is "established for the very purpose of advancing minority interests," *Hudson Valley*, 671 F.2d at 705. Other circumstances in which corporations have been found to have an imputed racial identity are "when *the owner, majority of shareholders and/or president are members of the specific class that is alleged to have been discriminated*

_____

[9] Both Plaintiffs and Arrowsmith agree that the analysis of whether Plaintiffs' complaint sufficiently alleges that Arrowsmith discriminated against them on the basis of race and/or religion for purposes of Section 1981 is equally applicable to the ECOA claim. (R. 33, Pls.' Mem. at 22 n.43; R. 24-1, Defs.' Mem. at 14 n.8.)

*against.*" *Contemporary Pers., Inc. v. Godiva Chocolatier, Inc.*, No. 09-00187, 2009 WL 2431461, at *2 (E.D. Pa. Aug. 6, 2009) (collecting cases).

Here, Corporate Plaintiffs summarily allege that they are each legal entities that have "acquired a racial and religious identity with a minority group protected by the safeguards of [Section 1981 and the ECOA]." (R. 1, Compl. ¶¶ 115, 120.) The specific facts that Corporate Plaintiffs rely upon to establish that they have acquired a minority identity are that Harris Schwartzberg is a Jewish-American businessman, (R. 1, Compl. at 2), and that "the Schwartzbergs, through their affiliates, purchased nursing and assisted living facilities with the intent of improving the experience of the residents. Each of the facilities affiliated with the Schwartzbergs are operated through companies, led by qualified, licensed professionals who hire, train, and maintain, the best available nurses, managers, and administrators." (*Id.* ¶¶ 31-32.) Corporate Plaintiffs further allege that Arrowsmith discriminated against them on the basis of their Jewish identity. (*Id.* ¶¶ 116-117, 123.)

These allegations fail to provide the Court with a factual basis for finding that Corporate Plaintiffs have acquired a racial or religious identity. Plaintiffs do not allege any facts regarding the ownership structures of Corporate Plaintiffs, whether Corporate Plaintiffs have been certified as having minority identities by a government institution, or whether Corporate Plaintiffs' purposes are to serve or advance Jewish interests. For instance, the complaint does not identify whether the Schwartzbergs are the sole shareholders or majority shareholders of Corporate Plaintiffs. *See, e.g., Amber Pyramid, Inc.*, 129 Fed. App'x. at 294. Nor does the complaint allege any facts to demonstrate that Corporate Plaintiffs are closely held companies owned and operated by the Schwartzbergs. Instead, the complaint's allegations suggest that Corporate Plaintiffs are

not directly owned by members of a protected minority group. For example, the complaint

alleges that the Schwartzbergs' affiliates, and not the Schwartzbergs themselves, purchased

nursing and assisted living facilities. (R. 1, Compl. ¶ 31.) The complaint also alleges that

Corporate Plaintiffs, who operate the nursing and assisted living facilities, are "led by qualified,

licensed professionals," (*id.* ¶ 32), and not the Schwartzbergs themselves or anyone else that

would qualify as being a member of a protected minority. Indeed, the complaint also suggests

that the Schwartzbergs' affiliates purchased the nursing and assisted living facilities with the

intent of improving the experience of the facilities' residents, and not with the intent of

advancing Jewish interests. (*Id.* ¶ 31.) The allegations set forth by Corporate Plaintiffs are

inadequate to establish that they have acquired a racial or religious identity. *See Cholla Ready*

*Mix, Inc. v. Civish*, 382 F.3d 969, 977-78 (9th Cir. 2004) (dismissing a Section 1981 claim

because the corporate plaintiff failed to allege facts from which the court could infer that the

plaintiff had an imputed racial identity); *Prestige Rests. & Entm't, Inc. v. Bayside Seafood Rest.,*

*Inc.*, No. 09-23128-CIV, 2010 WL 680905, at *1, *7 n.9 (S.D. Fla. Feb. 23, 2010) (requiring

dismissal of Section 1981 claim where the corporate plaintiff simply alleged that it was

discriminated against because of its patrons' race because the allegations were not adequate to

establish that the plaintiff had assumed a racial identity); *Contemporary Pers., Inc.*, 2009 WL

2431461, at *1-2 (dismissing a Section 1981 action where the complaint failed to allege the race

of the corporate plaintiff's owner, president, or shareholders, or the racial make-up of its

workforce).

Plaintiffs fail to inform the Court whether Schwartzberg is the direct owner of Corporate

Plaintiffs, the sole owner, sole shareholder, or even majority shareholder of Corporate Plaintiffs,

and for this reason the cases relied upon by Plaintiffs to support their argument that they have established a racial or religious identity, are distinguishable. *See, e.g., Bains LLC v. Arco Prods. Co.*, 405 F.3d 764, 770 (9th Cir. 2005) (corporation acquired an imputed racial identity where corporation was owned entirely by Sikh shareholders); *T & S Serv. Assocs., Inc. v. Crenson*, 505 F. Supp. 938, 943 (D.R.I. 1981) (corporate plaintiff properly alleged Section 1981 claim where sole owner of corporate plaintiff was African-American), *vacated and remanded on other grounds*, 666 F.2d 722 (1st Cir. 1981); *Shah v. Am. Bottling Co., Inc.*, No. 07-1042, 2008 WL 718435, at *4 (C.D. Ill. Mar. 14, 2008) (corporate plaintiff acquired an "imputed racial social identity" from sole shareholder and operator, who was born in India); *Calderon v. SW Bell Mobile Sys.*, LLC, 390 F. Supp. 2d 714, 717 (N.D. Ill. 2005) (closely held corporation of which a Mexican national was the majority stockholder, as well as the president, owner and operator, acquired an imputed racial identity and therefore had standing to pursue a Section 1981 action); *Florence Urgent Care v. Healthspan, Inc.*, 445 F. Supp. 2d 871, 877 (S.D. Ohio 2006) (corporate plaintiff owned entirely by doctors of Arab descent had a racial identity); *Howard Sec. Servs., Inc. v. Johns Hopkins Hosp.*, 516 F. Supp. 508, 513 (D. Md. 1981) (corporation that was wholly owned and operated by African-American plaintiff had a cause of action under Section 1981).

Seeking to avoid this result, Plaintiffs argue that their complaint "alleges that the Schwartzbergs are the ultimate beneficial owners of the [Corporate Plaintiffs], and that [Corporate Plaintiffs] acquired a racial identity from their Jewish owners and managers." (R. 33, Pls.' Mem. at 16.) Plaintiffs assert that "Arrowsmith saw the [Corporate Plaintiffs] as extensions of the Schwartzbergs in all respects, including their Jewish identity, and 'assault[ed]' them because of it." (*Id.*) Furthermore, they contend that "GE Financial's correspondence regarding

the Operating Loan repeatedly referred to the 'Schwartzbergs' . . . thereby demonstrating that Lenders consider the Schwartzbergs and [Corporate Plaintiffs] as one and the same." (*Id.* at 16-17.) According to Plaintiffs, "[t]hese allegations are more than sufficient to establish that [Corporate Plaintiffs] acquired a Jewish identity and have standing to assert claims under Section 1981." (*Id.* at 17.) As discussed above, however, Plaintiffs' arguments find no support in their complaint. The Court further notes that Plaintiffs never sought leave to amend their complaint throughout the pendency of Defendants' motion to dismiss. The Court reminds Plaintiffs that they cannot amend their complaint through their opposition briefs. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (noting the "axiomatic rule that a plaintiff may not amend his complaint in his response brief"); *see also Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) (a "complaint may not be amended by the briefs in opposition to a motion to dismiss"). Because Corporate Plaintiffs have failed to sufficiently allege in their complaint that they acquired a racial identity, the Court dismisses Counts I and II of their complaint.

B.    **Action for an accounting**

In Count V, asserted against all Defendants, Plaintiffs seek an accounting "regarding the management, administration, and handling of the loans." (R. 1, Compl. ¶ 137.) Defendants argue that Plaintiffs released this claim under the terms of the Operating Loan, and that Count V should therefore be barred. (R. 29, Arrowsmith's Mem. at 21-24; R. 37, Arrowsmith's Reply at 13-14.) An action for an accounting is an action based in contract. 1 Am. Jur. 2d *Accounts and Accounting* § 8 (2012). Therefore, an action on an account must be founded on a contract, either

express or implied. *Id.* Because Arrowsmith is not a party to the loans at issue, there is no contractual basis for the requested accounting. Accordingly, the Court dismisses Count V.

## II. Petition for fees

Arrowsmith also petitions the Court for an order directing Plaintiffs to pay him $29,979.00 in fees. (R. 58, Arrowsmith's Am. Pet.) This amount represents the attorneys' fees incurred by Arrowsmith in (1) litigating the New York Action, and (2) researching, drafting, and filing the Costs Motion, which this Court granted on August 10, 2011. (*Id.* at 1.) According to Arrowsmith, his counsel incurred fees of $16,269.00 in researching case law concerning Plaintiffs' two statutory discrimination claims in the Second Circuit and the Southern District of New York, and in drafting a motion to dismiss that relied on that case law in the New York Action. (*Id.* at 2.) Arrowsmith asserts that his counsel would not have incurred these expenses if Plaintiffs had filed the action in the Northern District of Illinois in the first instance. (*Id.*) With respect to the Costs Motion, Arrowsmith asserts that his counsel incurred fees of $13,710.00 for researching, drafting, and filing the Costs Motion that would not have been necessary had Plaintiffs not filed their action in New York, voluntarily dismissed that action, and then re-filed their action in the Northern District of Illinois. (*Id.* at 2.) According to Arrowsmith, the fees his counsel seek "relate to him individually or alternatively, to all Defendants collectively (including him), and thus, would have been incurred had Mr. Arrowsmith been the only defendant in the action." (*Id.* at 3.)

Plaintiffs present several arguments to support their position that Arrowsmith is not entitled to attorneys' fees. (R. 61, Pls.' Resp. at 4-13.) First, Plaintiffs argue that Arrowsmith has not shown, as a matter of law, that he is entitled to attorneys' fees under *Esposito v.*

18

*Piatrowski*, 223 F.3d 497, 501 (7th Cir. 2000). (*Id.* at 4, 6-9.) Second, Plaintiffs argue that

Arrowsmith has not established that he has incurred any attorneys' fees. (*Id.* at 4, 9-10.)

Plaintiffs also argue that Arrowsmith has not established that the attorneys' fees he seeks to

recover are reasonable, (*id.* at 4, 11), nor has he demonstrated that all of the work performed by

the Fulbright and Jenner attorneys was unnecessary or inapplicable to litigating the instant suit in

the Northern District of Illinois, (*id.* at 4, 12-13). Alternatively, Plaintiffs request that the Court

grant them leave to take limited discovery to determine whether Arrowsmith incurred any of the

attorneys' fees sought and, if so, the amount of such fees. (*Id.* at 4.) For the reasons discussed

below, the Court awards Arrowsmith $28, 518.05 in fees.

### A.    Legal basis for awarding attorneys' fees

Federal courts generally may not provide an award of attorneys' fees absent a statute or

contractual provision authorizing such an award. *Esposito v. Piatrowski*, 223 F.3d 497, 500 (7th

Cir. 2000); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257 (1975). Here,

Arrowsmith seeks the recovery of legal fees pursuant to Rule 41(d). Plaintiffs attempt to block

Arrowsmith from recovering attorneys' fees and argue that, as a matter of law, Arrowsmith is not

entitled to recovery any attorneys' fees as part of the "costs" that Rule 41(d) contemplates. (R.

61, Pls.' Resp. at 6-10.)

Rule 41(d) states, in relevant part: "If a plaintiff who previously dismissed an action in

any court files an action based on or including the same claim against the same defendant, the

court . . . may order the plaintiff to pay all or part of the costs of that previous action[.]" Fed. R.

Civ. P. 41(d). Rule 41(d) refers to "costs," but it fails to specify whether that term includes

attorneys' fees. The Advisory Committee Notes also fail to address the question. *See Esposito,*

223 F.3d at 501 (noting that the Advisory Committee Notes do not indicate whether such costs include attorneys' fees). Recognizing this ambiguity, the Seventh Circuit reasoned in *Esposito* that "[b]ecause Rule 41(d) does not refer to costs any differently than does 18 U.S.C. § 1920, which provides the statutory specification of allowable costs, fees may be included as costs only where the underlying statute so provides." *Id.* Therefore, the Seventh Circuit held "that a party may recover reasonable attorneys' fees as part of its 'costs' under Rule 41(d) only where the underlying statute defines costs to include attorneys' fees." *Id.* Thus, Plaintiffs argue, that under *Esposito*, "courts may only award attorneys fees as 'costs' under Rule 41(d) when the underlying statute would have allowed for the recovery of attorneys' fees." (R. 61, Pls.' Resp. at 6) (citing *Esposito*, 223 F.3d at 501).

Plaintiffs' argument on this point is without merit. Plaintiffs fail to recognize that district courts have the inherent authority to order an award of attorneys' fees under certain circumstances, such as where a party has acted in bad faith or inflicted unnecessary costs on the court or the defendants. *See Esposito*, 223 F.3d at 500 n.5 ("Attorneys' fees may be awarded by order of the court under certain factual circumstances . . . One such example is the courts' inherent authority to order a party acting in bad faith to pay for the attorneys' fees of its adversary.") (citing *F.D. Rich Co., Inc. v. United States ex rel. Indus. Lumber Co., Inc.*, 417 U.S. 116 (1974)); *Chambers v. Nasco, Inc.*, 501 U.S. 32, 45-46 (1991) ("a court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons") (citations and internal quotation marks omitted); *Mañez v. Bridgestone Firestone N. Am. Tire, LLC*, 533 F.3d 578, 591 (7th Cir. 2008) (noting that "courts retain inherent power to punish the full range of litigation abuses," which includes punishing a party "for an act that inflict[s]

needless costs on the court and the defendants"). *Esposito* did not change the long-standing rule establishing the inherent power of district courts to award attorneys' fees. Indeed, after reaching its holding in *Esposito*, the Seventh Circuit clarified that "attorneys' fees are not a recoverable cost of litigation under Rule 41(d) unless the substantive statute which formed the basis of the original suit allows for the recovery of such fees as costs *(or unless such fees are specifically ordered by the court)*." 223 F.3d at 501 (emphasis added). Accordingly, contrary to Plaintiffs' argument, the Court possesses the inherent authority to specifically order attorneys' fees under Rule 41(d). Here, the Court previously ordered the imposition of such fees on Plaintiffs when it granted Defendants' Costs Motion and requested that Defendants submit a petition for costs. (R. 59-1, Ex. 1, Aug. 10, 2011 Tr. at 8:9-15; R. 20, Min. Entry.) In so doing, it recognized that Plaintiffs had unnecessarily filed their complaint in the Southern District of New York. (R. 59-1, Ex. 1, Aug. 10, 2011 Tr. at 10:15-17.) The Court's order is consistent with *Esposito*, 223 F.3d at 501, which recognized that "awarding [attorneys'] fees as part of costs advances the purpose of Rule 41(d), which is to deter forum shopping and vexatious litigation."

### B. Amount of attorneys' fees

Having found that Rule 41(d) is applicable, and that the Court may impose attorneys' fees on Plaintiffs, the Court next determines the appropriate amount of the award of attorneys' fees. Failing to cite any case law, Plaintiffs argue that Arrowsmith has failed to establish that he incurred any attorneys' fees in connection with the voluntary dismissal of the New York Action. (R. 61, Pls.' Resp. at 4, 9-10.) According to Plaintiffs, "it appears that the Entity Defendants incurred and paid all of the legal fees that Arrowsmith now seeks to recover." (*Id.* at 9.) Plaintiffs' argument is based on nothing more than mere speculation. As Arrowsmith points out,

the fees his counsel seek "relate to him individually or alternatively, to all Defendants collectively (including him), and thus, would have been incurred had Mr. Arrowsmith been the only defendant in the action." (R. 58, Arrowsmith's Am. Pet. at 3.) District courts have inherent power "to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 44-45. Such sanctions are appropriate where a litigant has "abused the judicial process or otherwise conducted litigation in bad faith." *Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 793 (7th Cir. 2009) (citing *Maynard v. Nygren*, 332 F.3d 462, 470-71 (7th Cir. 2003)). Here, the Court has already determined that Plaintiffs abused the judicial process, and pursuant to its inherent authority, the Court will fashion an appropriate sanction.

Where a case is voluntarily dismissed and re-filed by the plaintiff, attorneys' fees are awarded to the defendant to compensate for the unnecessary expenses incurred by the litigation. *Cauley v. Wilson*, 754 F.2d 769, 772 (7th Cir. 1985). Generally, courts "should not impose any costs associated with work that will still be useful to the defendants in the instant litigation." *Oteng v. Golden Star Res., Ltd.*, 615 F. Supp. 2d 1228, 1240 (D. Colo. 2009) (citing *Esquivel v. Arau*, 913 F. Supp. 1382, 1386 (C.D. Cal. 1996)); *see also Westlands Water Dist. v. United States*, 100 F.3d 94, 97 (9th Cir. 1996) (remanding to the district court to consider, *inter alia*, whether to condition a voluntary dismissal under Rule 41(a)(2) on the payment of costs and attorney fees, and instructing the district court that "if [it] decides it should condition dismissal on the payment of costs and attorney fees, the defendants should only be awarded attorney fees for work which cannot be used in any future litigation on these claims.") (citing *Koch v. Hankins*, 8 F.3d 650, 652 (9th Cir. 1993));*Copeland v. Hussmann Corp.*, 462 F. Supp. 2d 1012, 1024

(E.D. Mo. 2006) (allowing award of "attorneys' fees for any work done in the previously dismissed case that is useless in the present case").

### 1.   Unnecessary work related to the New York Action

Prior to the dismissal of the New York Action, Arrowsmith asserts that his counsel, from the law firm of Fulbright & Jaworski L.L.P. ("Fulbright"), incurred $16,093.00 in attorneys' fees for defending the New York Action. (R. 59, Arrowsmith's Mem. at 3.) Arrowsmith seeks attorneys' fees for 57 billable hours spent by his attorneys researching the two anti-discrimination statutes at issue and drafting a motion to dismiss the New York Action. (*Id.* at 5.) Arrowsmith asserts that Sarah O'Connell, a senior associate at Fulbright, who graduated law school in 2002 and bills her clients at an hourly rate of $382.00, expended 6.5 hours on the New York Action. (*Id.* at 4-5.) Additionally, Arrowsmith claims that Jami Vibbert, a Fulbright associate who graduated law school in 2007 and bills her clients at an hourly rate of $273.00, expended 50.5 hours on the New York Action. (*Id.*) To support his fee petition, Arrowsmith submitted Fulbright's invoices for the work its associates completed while representing Arrowsmith in the New York Action. (R. 59-2, Ex. 2, Invoice No. 11196925.)

After reviewing Fulbright's invoices, the Court first notes that Arrowsmith has failed to precisely indicate the billing entries for which he is seeking attorneys' fees. Additionally, none of the billing entries indicate that the research conducted by O'Connell and Vibbert on the two anti-discrimination statutes focused solely on the Second Circuit or the federal district courts in New York, and the Southern District of New York in particular. Indeed, Arrowsmith relied on at least one case from the Second Circuit in drafting their motion to dismiss in this case, in addition to case law from other Circuit Courts of Appeals, which suggests that Arrowsmiths' research of

23

the Second Circuit precedent was not entirely useless. The Court therefore has difficulty finding

that all of the defense's initial research for the New York action was unnecessary and not useful

in defending the instant action. That said, O'Connell and Vibbert spent time meeting to discuss

the research and to strategize on the motion to dismiss in the New York Action. The strategy

employed by the defense in the New York Action is likely to have been materially different than

the strategy employed by the defense in the instant action as the motion to dismiss had to be filed

in a different judicial venue. Therefore, the Court will allow for the recovery of those billing

entries indicating that O'Connell and Vibbert met and conferred regarding the statutory

discrimination arguments to be made in the motion to dismiss in the New York Action.

Specifically, the Court allows Arrowsmith to recover attorneys' fees for two meetings that

O'Connell and Vibbert held on June 13 and June 14, for .20 hours and 1.4 hours respectively, for

a total of $1,048.00.

Vibbert also spent time researching pleading standards and motions to dismiss pursuant

to Rule 12(b)(6). Based on the Court's experience with such matters, this research is likely to

have been focused almost exclusively on Second Circuit precedent. Therefore, although the

Court will not allow Arrowsmith to recover fees for time spent generally researching the two

anti-discrimination statutes that Plaintiffs allege Arrowsmith violated, the Court will allow

Arrowsmith to recover one-half of the time for those billing entries constituting Vibber's

research of pleading standards and Rule 12(b)(6) cases. Specifically, the Court allows

Arrowsmith to recover for 1.3 hours of research conducted on June 14, 1.2 hours of research

conducted on June 16, 1.55 hours of research conducted on June 20, and 2.6 hours of research

conducted on June 21, for a total of $1,815.45.

In addition, both O'Connell and Vibbert spent time drafting a motion to dismiss intended to be filed in the Southern District of New York, and although it is plausible that they could have made substantially similar arguments before this Court as those contained in their motion to dismiss for the Southern District of New York, it is unlikely that they could have replicated that work verbatim into a new document to be filed before this Court. The Court will therefore allow Arrowsmith to recover one-half of the billing entries representing the time that O'Connell and Vibbert spent drafting or revising the motion to dismiss. Specifically, the Court allows Arrowsmith to recover 3.9 hours for July 14, 2.7 hours for July 15, 3.9 hours for July 18, and 4.8 hours for July 19 for Vibbert's work. Additionally, the Court allows Arrowsmith to recover 1.7 hours for July 18, 1.85 hours for July 19, and 1.15 hours for July 20 for O'Connell's work. Therefore, Arrowsmith is entitled to recover $11,944.60 for the time that either O'Connell or Vibbert spent drafting and revising a motion to dismiss that was intended to be filed in the Southern District of New York, but due to the change in venue had to be filed in the Northern District of Illinois.

In the exercise of its discretion, the Court finds that Arrowsmith may recover $14,808.05 in attorneys' fees for work that the Court determines was unnecessary and not useful to the instant action.

### 2. Unnecessary work related to the Costs Motion

In addition, Arrowsmith argues that he should also be compensated for expenses incurred in researching, drafting, and filing the Costs Motion. (R. 58, Arrowsmith's Mot. at 2.) Following the Plaintiffs' voluntary dismissal of the New York Action, Arrowsmith incurred $13,710.00 in attorneys' fees for work performed by Fulbright attorneys and attorneys from the

law firm of Jenner & Block L.L.P. ("Jenner") on the Costs Motion. (R. 59, Arrowsmith's Mem. at 3.) Specifically, Arrowsmith asserts that Fulbright and Jenner attorneys spent a total of 38.4 billable hours on the Costs Motion. (*Id.* at 6.) According to Arrowsmith, Linda Addison, a partner at Fulbright who bills her clients at an hourly rate of $634.00, spent 4.2 billable hours on the Costs Motion. (*Id.* at 4, 6.) Arrowsmith asserts that O'Connell spent 11.8 billable hours working on the Costs Motion and that Vibbert billed 16.8 hours for her work on the Costs Motion. (*Id.* at 6.) Arrowsmith also states that Barbara Steiner, another partner at Jenner who bills her clients at an hourly rate of $630.00, spent .6 billable hours on the Costs Motion. (*Id.* at 4, 6.) David Saunders, an associate at Jenner who graduated from law school in 2007 and bills his clients at an hourly rate of $315.00, billed 5 hours on the Costs Motion. (*Id.* at 5-6.)

"The Seventh Circuit teaches that attorney's fees incurred in litigating and establishing an attorney's entitlement to fees are generally compensable." *Holmstrom v. Metro. Life Ins., Co.*, No. 07-CV-6044, 2011 WL 2149353, at *8 (N.D. Ill. May 31, 2011) (citing *Bond v. Stanton*, 630 F.2d 1231, 1235 (7th Cir. 1980)). In their response to Arrowsmith's amended petition for fees, Plaintiffs do not contest the amount of fees sought for the Costs Motion. (R. 61, Pls.' Resp.)

The Court finds that the fees incurred by Arrowsmith in bringing the Costs Motion are appropriate and that they help further the purpose of Rule 41(d), which is, in part, to prevent vexatious litigation. *See Esposito*, 223 F.3d at 501. Had Plaintiffs originally filed this action in this District, or had Plaintiffs not chosen to re-file this action, Arrowsmith would not have had to expend time drafting the Costs Motion. Because the invoices support his request, in the exercise of its discretion, the Court grants Arrowsmith the attorneys' fees for the time spent in preparing, researching, drafting, and filing the Costs Motion. Thus, the Court awards Arrowsmith the full

$13,710.00 in attorneys' fees associated with bringing the Costs Motion. Therefore, in the exercise of its discretion, the Court concludes that Arrowsmith is entitled to recover from Plaintiffs a total of $28,518.05 in costs pursuant to Rule 41(d). Since the Court grants Arrowsmith's amended petition for fees, Plaintiffs' alternative request for limited discovery is denied.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Arrowsmith's motion to dismiss (R. 25), GRANTS Arrowsmith's motion to reconsider (R. 47), and GRANTS Arrowsmith his amended petition for fees (R. 58), in the amount of $28,518.05. The Court directs the Clerk to enter a final judgment in favor of defendant Arrowsmith and against Plaintiffs.

Entered: _____

**Judge Ruben Castillo**
**United States District Court**

**Date:** December 4, 2012